# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLORADO
# Judge Robert E. Blackburn

Civil Action No. 08-cv-00671-REB

SAMI AL KARIM,

    Plaintiff,

vs.

MICHAEL MUKASY, Attorney General of the United States,
MICHAEL CHERTOFF, Secretary for the Department of Homeland Security,
EMILIO T. GONZALEZ, Director for Citizenship and Immigration Services,
ROBERT M. COWAN, Director of the National Benefits Center of CIS,
ROBERT MATHER, District Director for the Denver CIS District, and
ROBERT S. MUELLER, III, Director, Federal Bureau of Investigation,

    Defendants.

## ORDER CONCERNING MOTION TO DISMISS AMENDED COMPLAINT

**Blackburn, J.**

    The matter before me is **Defendants' Motion To Dismiss Amended Complaint** [#14] filed July 24, 2008. I deny the motion.

## I. JURISDICTION

    I have putative subject matter jurisdiction of this action under 28 U.S.C. § 1331 (federal question).

## II. STANDARD OF REVIEW

    Defendants' motion to dismiss arises under Federal Rule of Civil Procedure 12(b)(1). A motion to dismiss under Federal Rule of Civil Procedure 12(b)(1) may consist of either a facial or a factual attack on the complaint. ***Holt v. United States***, 46 F.3d 1000, 1002 (10th Cir. 1995). Because defendants' motion presents a facial attack, I

must accept the allegations of the complaint as true. *Id*. Plaintiff bears the burden of establishing that subject matter jurisdiction exists. ***Henry v. Office of Thrift Supervision***, 43 F.3d 507, 512 (10th Cir. 1994); ***Fritz v. Colo.***, 223 F.Supp.2d 1197, 1199 (D. Colo. 2002).

### III. ANALYSIS

On February 14, 2001, plaintiff, his wife, and his son were admitted into the United States as refugees from Iraq. Plaintiff has continually resided in the United States since that date. On April 30, 2002, plaintiff and his family submitted form I-485 applications to the United States Citizenship and Immigration Services ("USCIS") for adjustment of residency status from refugee to legal permanent resident ("LPR"). This process is known colloquially as obtaining a "green card." Plaintiff's wife and son were both granted LPR status later in 2002, but plaintiff's application remains pending.

As a part of the I-485 application processing procedures, the FBI performs a name check on the applicant, the results of which allow the USCIS to undertake various additional security background checks and begin adjudication. As of early 2008, the FBI had not yet performed a name check on plaintiff. On April 2, 2008, plaintiff filed a complaint in this court, seeking an order compelling the FBI to perform a name check and the USCIS to adjudicate his I-485 application. Plaintiff asserts that the delay in adjudication is causing him harm in that while the application remains pending, he cannot freely leave the United States, he must pay onerous annual fees for work authorization and permission to travel, and he cannot accrue time toward becoming a

naturalized United States citizen.[1]

After plaintiff filed his complaint, it came to light that the FBI had performed a name check on plaintiff approximately one week prior. Plaintiff then filed an amended complaint in which he dropped the FBI as a named defendant and omitted allegations concerning the name check. Plaintiff now seeks (1) a court order requiring immediate adjudication of his I-485 application; and (2) a declaration that defendants' "policies, practices and customs, which deprive [p]laintiff of his right to a timely adjudication of a duly filed application, violate the United States Constitution, the Immigration and Nationality Act, [8 U.S.C. § 1401, *et seq.*,] and the Administrative Procedure Act [5 U.S.C. § 701, *et seq.* (the "APA")]." Plaintiff asserts that this court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331, the Mandamus Act, 28 U.S.C. § 1361, the APA, and the Declaratory Judgment Act, 28 U.S.C. § 2201.[2]

Defendants have moved to dismiss the complaint, arguing that this court lacks subject matter jurisdiction to force adjudication of plaintiff's application because plaintiff cannot satisfy the requirements of the Mandamus Act or the APA or, if he can, a jurisdiction-stripping statute applies. I disagree and, therefore, deny the motion.

Before turning to the substance of defendants' arguments, I note that for reasons unknown and quite mysterious, defendants make much ado in their motion about a change in the law that may affect plaintiff's I-485 application. According to defendants,

---

[1] To be eligible for naturalization, an individual must have resided in the United States with LPR status for at least five years. *See* http://www.uscis.gov (last visited March 23, 2009).

[2] Defendants do not address plaintiff's request for declaratory relief or this court's jurisdiction under the Declaratory Judgment Act. Accordingly, neither shall I.

plaintiff's application to obtain refugee status contained information that he is or was a member and supporter of a terrorist organization.  Formerly, association with a terrorist organization automatically precluded an individual from obtaining LPR status.  A new law enacted in 2008 provides that the Secretary of Homeland Security may determine at his discretion that the automatic ban on LPR status does not apply to certain individuals associated with certain organizations.  Evidently, the Department of Homeland Security is "considering several groups and categories of cases for additional terrorist-related inadmissibility provision exemptions," and all applications involving these exemptions – including plaintiff's – have been put on hold "until further notice."  In response, plaintiff argues at great length that the 2008 law should not be applied to him, proclaiming that he has lived in the United States for years without incident and denouncing defendants' determination that he was associated with a terrorist organization as based on "double hearsay."[3]

None of these arguments are relevant or helpful to the resolution of the issue presented by this motion to dismiss.  Therefore, unlike the parties, I shall focus exclusively on this court's subject matter jurisdiction.  A *précis* and attendant discussion of the statutes underlying defendants' arguments provides a helpful framework for my analysis.

---

[3]  Plaintiff's response suggests either a loose grasp on or a novel view of the rules of evidence and civil procedure.  Plaintiff re-characterizes the arguments in his complaint and seeks new relief.  He now argues that his rights to due process have been violated, asks for judicial review of the determination that he was associated with a terrorist organization, and seeks attorney fees and court orders forcing adjudication of his application within 30 days, and "allow[ing] the defendant [sic] to amend his complaint so as to seek review of the agency action" in the event his application is denied.  If plaintiff wishes to amend his complaint, he should file a proper motion in keeping with the local rules of this court.  **See D.C.COLO.LCivR** 7.1C ("A motion shall be made in a separate paper.").

## A. The Mandamus Act and the APA

The Mandamus Act vests federal district courts with original jurisdiction "to compel an officer or employee of the United States or any agency thereof to perform a duty owed to the plaintiff." 28 U.S.C. § 1361. However, "mandamus is an extraordinary remedy, to be reserved for extraordinary situations." **Gulfstream Aerospace Corp. v. Mayacamas Corp.**, 485 U.S. 271, 289, 108 S.Ct. 1133, 1143, 99 L.Ed.2d 296 (1988). Therefore, a writ of mandamus is only appropriate when a plaintiff can establish that (1) he has a clear right to the relief sought; (2) the defendant holds a plainly defined, mandatory, and non-discretionary duty to perform the act in question; and (3) no other adequate remedy is available. **Rios v. Ziglar**, 398 F.3d 1201, 1206 (10th Cir. 2005).

The APA is not an independent basis for jurisdiction but can create jurisdiction over a challenge to a federal agency action when taken in conjunction with the general grant of federal question jurisdiction. **Bowen v. Massachusetts**, 487 U.S. 879, 891 n.16, 108 S.Ct. 2722, 2730, 101 L.Ed.2d 749 (1988). The APA provides that "[a] person suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action within the meaning of a relevant statute, is entitled to judicial review thereof." 5 U.S.C. § 702. Pursuant to the APA, federal courts have jurisdiction to compel agency action that has been unlawfully withheld or unreasonably delayed. *Id.* §§ 555(b) & 706(1). Like the Mandamus Act, the APA cannot provide relief if "agency action is committed to agency discretion by law." *Id.* § 701(a)(2). Thus, under the APA, a federal court may not direct an agency as to what its decisions should be, but the court may compel the agency to act if the agency is obligated to take certain action.

5

*Norton v. Southern Utah Wilderness Alliance*, 542 U.S. 55, 64, 124 S.Ct. 2373, 2380, 159 L.Ed.2d 137 (2004).

The Tenth Circuit has held that when relief under the APA is available to challenge unreasonably delayed agency action, relief under the Mandamus Act technically is not, because mandamus is only appropriate when no other adequate relief is available. *Mt. Emmons Mining Co. v. Babbitt*, 117 F.3d 1167, 1170 (10th Cir. 1997). Several courts, including the Tenth Circuit, have recognized that relief under the Mandamus Act and the APA is co-extensive. *See id.* (noting that mandatory injunction authorized under the APA is "essentially in the nature of mandamus relief"). "The two statutes are, after all, merely different means of compelling an agency to take action [that] by law it is required to take." *Hernandez-Avalos v. INS*, 50 F.3d 842, 844 (10th Cir.), *cert. denied*, 116 S.Ct. 92 (1995) (citations and internal quotation marks omitted). Accordingly, there is no need for two separate analyses in this case. I examine subject matter jurisdiction only under the APA in conjunction with 28 U.S.C. § 1331. In so doing, I am mindful of the "well-settled presumption favoring interpretations of statutes that allow judicial review of administrative action." *McNary v. Haitian Refugee Center, Inc.*, 498 U.S. 479, 496, 111 S.Ct. 888, 898, 112 L.Ed.2d 1005 (1991).

Defendants argue – and plaintiff contests – that the pace of adjudication is discretionary and that plaintiff cannot establish that defendants have any obligation to adjudicate applications within any period of time. Accordingly, I must first look to the statutory and regulatory provisions under which plaintiff filed his I-485 application to determine whether the pace of adjudication is discretionary.

Plaintiff filed his I-485 application pursuant to 8 U.S.C. § 1159, which requires that refugees report annually for "inspection and examination" by the Department of Homeland Security and provides that the Secretary of Homeland Security or the Attorney General, at either's discretion, "may adjust" an individual's residency status from refugee to LPR so long as certain conditions are met. 8 U.S.C. § 1159(a)-(b). The implementing regulations state that an applicant "shall be notified of the decision [concerning his residency status], and if the application is denied, of the reasons for denial." *Id.* § 209.2. Although, the phrase "may adjust" clearly places the decision whether to grant or deny an I-485 application within the discretion of the Attorney General and the Secretary of Homeland Security, the requirement that an applicant "shall be notified" of the decision suggests that the duty to adjudicate I-485 applications, independent of the outcome, is mandatory. **See Singh v. Still**, 470 F.Supp.2d 1064, 1067 n.6 (N.D. Cal. 2006) (citing cases and determining that apposite regulations create a non-discretionary duty to adjudicate I-485 applications).

As is particularly relevant in the instant case, the statute and the regulations are silent as to the pace of adjudicating an I-485 application. To complicate matters, there is a split of authority as to whether the pace is discretionary or mandatory and, therefore, as to whether federal courts have jurisdiction to order expedited adjudication.[4] **See, e.g.**, **Aslam v. Mukasey**, 531 F.Supp.2d 736, 740 nn. 3 & 4 (E.D. Va. 2008) (referencing conflicting authority). However, there is a clear trend toward finding that, although there is no express statutory or regulatory deadline by which the

---

[4] As neither the Supreme Court nor the Tenth Circuit has yet definitively decided the issue, I find it surprising that neither party mentions the split of authority in their briefing.

7

USCIS must adjudicate an application, at some point, the failure to adjudicate runs afoul of section 555(b) of the APA. Indeed:

> [w]ere it otherwise, the [USCIS] could hold adjustment applications in abeyance for decades without providing any reasoned basis for doing so. Such an outcome defies logic – the [USCIS] simply does not possess unfettered discretion to relegate aliens to a state of "limbo," leaving them to languish there indefinitely. This result is explicitly foreclosed by the APA.

*Kim v. Ashcroft*, 340 F.Supp.2d 384. 393 (S.D. N.Y. 2004); *see also Kaplan v. Chertoff*, 481 F.Supp.2d 370, 399 (E.D .Pa. 2007) (same); *Aslam*, 531 F.Supp.2d at 740 nn.3 & 4 (E.D. Va. 2008) (collecting cases and noting that "a majority of the district courts addressing the issue have [sic] found jurisdiction" to review the pace of adjudication of I-485 applications).

I agree that the existence of section 555(b) of the APA obviates any possibility that Congress intended to allow I-485 applications to linger, unprocessed, *ad infinitum*. Despite the lack of binding precedent, I am persuaded that "the weight of authority now favors a finding of subject matter jurisdiction where petitioners challenge the failure to adjudicate adjustment of status applications within reasonable time." *Amanjee v. Chertoff*, 2009 WL 347666 at *5 (E.D. Cal. Feb. 11, 2009). I am persuaded further by three recent decisions in which federal district courts found subject matter jurisdiction under the APA in cases concerning delay in adjudication of I-485 applications filed pursuant to 8 U.S.C. § 1159. *See Kashkool v. Chertoff*, 553 F.Supp.2d 1131, 1136 (D. Ariz. 2008); *Al Sawad v. Frazier*, 2007 WL 2973833 at *2-4 (D. Minn. Oct. 9, 2007); *Ibrahim v. Chertoff*, 2007 WL 1558521 at *2 (S.D. Cal. May 25, 2007).

## B. The Illegal Immigration Reform and Immigrant Responsibility Act of 1996

Defendants argue also that if jurisdiction exists under the APA, a provision of the Illegal Immigration Reform and Immigrant Responsibility Act of 1996 ("IIRIRA"), 8 U.S.C. § 1252(a)(2)(B)(ii), divests it. In pertinent part, IIRIRA precludes a court from exercising jurisdiction to review any "decision or action of the Attorney General or the Secretary of Homeland Security[,] the authority for which is specified under this title . . . to be in the discretion of the Attorney General or the Secretary of Homeland Security."

Courts have approached the applicability of this jurisdiction-stripping provision differently. Some courts have reasoned that IIRIRA only precludes jurisdiction over such discretionary authority as is specified in the statute, and because the pace of adjudication is not expressly stated to be within the discretion of the Attorney General or the Secretary of Homeland Security by statute, the jurisdiction-stripping provision does not apply. Other courts have found that because the duty to adjudicate I-485 applications within a reasonable time is mandatory, and where jurisdiction is otherwise proper under the APA or the Mandamus Act, the provision does not apply. *See Ibrahim*, 2007 WL 1558521 at *2-3 (citing cases). Although either would lead to the same result, and in the absence of binding precedent in this circuit, I find the latter rationale persuasive in light of my analysis under the APA.

## IV. ORDERS

**THEREFORE, IT IS ORDERED** as follows:

1. That **Defendants' Motion To Dismiss Amended Complaint** [# 14] filed July 24, 2008, is **DENIED**;

2. That within **sixty (60) days** of the date of this order, defendants shall provide to the court and to plaintiff evidence specific to plaintiff's application demonstrating why the delay in adjudicating his application is reasonable; and

3. That motions for summary judgment **MAY BE FILED** no more than **fifteen (15) days** after plaintiff receives the evidence described in paragraph 2 above with subsequent briefing deadlines as prescribed by **D.C.COLO.LCivR** 7.1(c).

Dated March 25, 2009, at Denver, Colorado.

**BY THE COURT:**

Bob Blackburn
Robert E. Blackburn
United States District Judge