# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLORADO
# Judge Robert E. Blackburn

Civil Action No. 08-cv-00671-REB

SAMI AL KARIM,

    Plaintiff,

vs.

ERIC HOLDER, Attorney General of the United States,
JANET NAPOLITANO, Secretary for the Department of Homeland Security,
EMILIO T. GONZALEZ, Director for Citizenship and Immigration Services,
ROBERT M. COWAN, Director of the National Benefits Center of CIS, and
ROBERT MATHER, District Director for the Denver CIS District,

    Defendants.

## ORDER RE: MOTIONS FOR SUMMARY JUDGMENT

**Blackburn, J.**

The matters before me are (1) **Plaintiff's Motion for Summary Judgment** [#24][1] filed June 10, 2009; and (2) **Defendants' Motion for Summary Judgment** [#25], filed June 10, 2009. I grant plaintiff's motion and deny defendants' motion.

## I. JURISDICTION

I have jurisdiction over this matter pursuant to 28 U.S.C. §1331 (federal question), in combination with the Administrative Procedure Act, 5 U.S.C. §701 *et seq.* (the "APA").[2]

---

[1] [#24] is an example of the convention I use to identify the docket number assigned to a specific paper by the court's case management and electronic case filing system (CM/ECF). I use this convention throughout this Order.

[2] Plaintiff seeks relief under both the APA and the Mandamus Act, 28 U.S.C. §1361, in his amended complaint and discusses both interchangeably in his motion for summary judgment. Technically, the availability of relief under the APA precludes plaintiff from seeking a writ of mandamus, which is only available when no other remedy exists. *Mt. Emmons Mining Co. v. Babbitt*, 117 F.3d

## II.  STANDARD OF REVIEW

Summary judgment is proper when there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c); **Celotex Corp. v. Catrett**, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986).  A dispute is "genuine" if the issue could be resolved in favor of either party. **Matsushita Electric Industrial Co., Ltd. v. Zenith Radio Corp.**, 475 U.S. 574, 586, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986); **Farthing v. City of Shawnee**, 39 F.3d 1131, 1135 (10th Cir. 1994).  A fact is "material" if it might reasonably affect the outcome of the case.  **Anderson v. Liberty Lobby, Inc.**, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986); **Farthing**, 39 F.3d at 1134.

A party who does not have the burden of proof at trial must show the absence of a genuine fact issue.  **Concrete Works, Inc. v. City & County of Denver**, 36 F.3d 1513, 1517 (10th Cir. 1994), **cert. denied**, 115 S.Ct. 1315 (1995).  By contrast, a movant who bears the burden of proof must submit evidence to establish every essential element of its claim or affirmative defense.  **See In re Ribozyme Pharmaceuticals, Inc. Securities Litigation**, 209 F.Supp.2d 1106, 1111 (D. Colo. 2002).  In either case, once the motion has been properly supported, the burden shifts to the nonmovant to show, by tendering depositions, affidavits, and other competent evidence, that summary

---

1167, 1170 (10th Cir. 1997).  However, as noted in my **Order Concerning Motion To Dismiss Amended Complaint** [#22], filed March 25, 2009, any distinction between the APA and the Mandamus Act is ultimately irrelevant.  **See Hernandez-Avalos v. I.N.S.**, 50 F.3d 842, 844 (10th Cir.) (noting that the Mandamus Act and the APA are "merely different means of compelling an agency to take action [that] by law it is required to take"), **cert. denied**, 116 S.Ct. 92 (1995) (citations and internal quotation marks omitted).  Because the relief plaintiff seeks under the APA and the Mandamus Act is "essentially the same," I do not separately analyze plaintiff's claims under the Mandamus Act.  **Independence Mining Co. v. Babbitt**, 105 F.3d 502, 507 (9th Cir. 1997).

2

judgment is not proper. ***Concrete Works***, 36 F.3d at 1518.[3] All the evidence must be viewed in the light most favorable to the party opposing the motion. ***Simms v. Oklahoma ex rel. Department of Mental Health and Substance Abuse Services***, 165 F.3d 1321, 1326 (10th Cir.) ***cert. denied***, 528 U.S. 815, 120 S.Ct. 53, 145 L.Ed.2d 46 (1999). However, conclusory statements and testimony based merely on conjecture or subjective belief are not competent summary judgment evidence. ***Rice v. United States***, 166 F.3d 1088, 1092 (10th Cir.), ***cert. denied***, 528 U.S. 933, 120 S.Ct. 334, 145 L.Ed.2d 260 (1999).

### III. ANALYSIS

The facts of this case are largely undisputed.[4] Plaintiff is a citizen of Lebanon who obtained refugee status in the United States on February 14, 2001, arriving from Iraq with his wife and son. He has resided in the United States since that date. On his refugee application, he disclosed that he had been a member of the Iraqi Dawa party from 1980 to 1986. On April 30, 2002, plaintiff submitted a form I-485 application to the United States Citizenship and Immigration Services ("USCIS") to obtain an adjustment of residency status from refugee to legal permanent resident ("LPR").[5]

---

[3] The mere fact that the parties have filed cross-motions for summary judgment does not necessarily indicate that summary judgment is proper. ***See Atlantic Richfield Co. v. Farm Credit Bank of Wichita***, 226 F.3d 1138, 1148 (10th Cir. 2000); ***James Barlow Family Ltd. Partnership v. David M. Munson, Inc.***, 132 F.3d 1316, 1319 (10th Cir. 1997); ***see also Buell Cabinet Co. v. Sudduth***, 608 F.2d 431, 433 (10th Cir. 1979) ("Cross-motions for summary judgment are to be treated separately; the denial of one does not require the grant of another.").

[4] As plaintiff failed to respond to defendants' motion for summary judgment and the undisputed facts cited therein, I deem those facts undisputed. Moreover, in his reply brief, plaintiff accepts and incorporates the facts set forth in defendants' motion.

[5] This process is known colloquially as obtaining a "green card."

As a part of the I-485 application processing procedures, plaintiff's name was submitted to the Federal Bureau of Investigation ("FBI") for a background check, the results of which would allow the USCIS to undertake various additional security checks and begin adjudication of his application. The FBI completed its name check in March, 2008. However, plaintiff's application remains pending.

The Dawa party has been designated as a "Tier III" terrorist organization and under prior law, plaintiff's past association with this organization would likely have resulted in denial of his application and his removal from the United States. However, shortly before the FBI's background check of plaintiff's application was completed, Congress expanded the Secretary of Homeland Security's discretion to allow individuals associated with certain terrorist groups to become LPRs. *See* 8 U.S.C. §1182(d). The process of determining which groups are eligible for this categorization is lengthy and is further protracted in requiring collaboration with the Secretary of State and the Attorney General. The USCIS has interposed a policy placing several I-485 applications, including plaintiff's, on indefinite hold while it determines which organizations fall within the ambit of the new legislation.[6]

In April, 2008, plaintiff filed a complaint seeking injunctive and declaratory relief. He subsequently filed an amended complaint, seeking (1) a writ of mandamus, an

---

[6] Defendants recently filed a notice stating that plaintiff's application is still on hold pending determination whether the Dawa party is subject to the legislative exemption. (**See Defendants' Supplement to Their Motion for Summary Judgment [Doc. No. 25] and to Their Response to Plaintiff's Motion for Summary Judgment [Doc. No. 26]** [#29], filed March 19, 2010.)

injunction under the APA, and an order under the Immigration and Nationality Act[7] directing immediate adjudication of his application for LPR status; and (2) judicial declarations that defendants' policies and practices violated duties owed to him under the Immigration and Nationality Act as well as his Constitutional rights under the Fifth Amendment. The present motions seek summary judgment only as to plaintiff's claim seeking adjudication of his application, and it is to that issue that I now turn.

Plaintiff's claim for adjudication arises under section 706 of the APA, which provides relief by allowing a court to compel agency action that the agency has "unlawfully withheld or unreasonably delayed." **Norton v. Southern Utah Wilderness Alliance**, 542 U.S. 55, 62, 124 S.Ct. 2373, 2378, 159 L.Ed.2d 137 (2004). In making this determination, I must consider "(1) the extent of the delay, (2) the reasonableness of the delay in the context of the legislation authorizing agency action, (3) the consequences of the delay, and (4) administrative difficulties bearing on the agency's ability to resolve an issue." **Qwest Communications International Inc v. Federal Communications Commission**, 398 F.3d 1222, 1239 (10th Cir. 2005); **see also Kim v. United States Citizenship & Immigration Services**, 551 F.Supp. 2d 1258, 1265 (D. Colo. 2008). Considering each of these factors, I find that all weigh in favor of plaintiff's

---

[7] Although plaintiff does not address his claims under the Immigration and Nationality Act, I note that the statute does not provide a cause of action for an applicant who has not yet been subjected to examination. **See Walji v. Gonzales**, 500 F.3d 432, 439 (5th Cir. 2007). Nowhere has plaintiff specified whether or when he was subjected to examination. The longstanding well-pleaded complaint rule requires that "the federal question giving rise to jurisdiction must appear on the face of the complaint." **Karnes v. Boeing Co.**, 335 F.3d 1189, 1192 (10th Cir. 2003). I, therefore, find that plaintiff has not established that I have subject matter jurisdiction over his claim and dismiss it. **Schrier v. University of Colorado**, 427 F.3d 1253, 1268 (10th Cir. 2005) (holding that a district court can *sua sponte* dismiss a claim when subject matter jurisdiction lacking). In any event, dismissal of this claim yields little practical effect in this case, as the claim is co-extensive with plaintiff's claims under the APA and the Mandamus Act.

demand for adjudication.

Regarding the extent of the delay, defendants assert that the USCIS should not be faulted for the six years it took the FBI to complete a name check on plaintiff. Because completion of the name check is a prerequisite to adjudication of the application, defendants reason that the USCIS is accountable only for any perceived delay after the name check was completed in March, 2008. Plaintiff does not address this factor directly, but underscores that he filed his application in April, 2002, and that his application is now on indefinite hold. I find plaintiff's position compelling.

As a matter of course, the USCIS and, by extension, the FBI, should be granted a reasonable time to complete a name check.[8] What constitutes a reasonable amount of time varies depending on the specific facts of the case, including the amount of information regarding the applicant that needs to be collected and the difficulty of obtaining such information. "However, it is the government's burden to offer an explanation for a particular delay." **Aslam v. Mukasey**, 531 F.Supp.2d 736, 744 (E.D. Va. 2008). Here, defendants merely foist blame on the FBI and assert that "whether the FBI would have been subject to a claim of unreasonable delay is not the issue." (**Defendants' Motion for Summary Judgment** at 16 [#25] filed June 10, 2010.) To the contrary, it is precisely the issue. The APA imposes a legal obligation on the USCIS to adjudicate I-485 applications and, by implication, name checks relating to such applications, within a reasonable period of time. "If the FBI's name check process is

---

[8] Although there is no specific statutory time requirement for the USCIS to adjudicate I-485 applications, Congress has set a normative expectation that a reasonable period is "not later than 180 days after the initial filing of the application." 8 U.S.C. §1571. *See also Kashkool v. Chertoff*, 553 F.Supp.2d 1131, 1144 (D. Ariz. 2008).

6

obstructing compliance with that legal obligation, [US]CIS must either remove the obstruction or accept the legal penalties." **Aslam**, 531 F.Supp.2d at 744. Moreover, independent of whether the FBI's six-year delay was reasonable, the fact remains that plaintiff's application is not even in the queue to be considered, and defendants have given no indication of when or even whether this circumstance may change. Such indeterminate deferment favors an order for immediate adjudication.

Turning to the reasonableness of the delay, defendants correctly maintain that I must consider "the context of the legislation authorizing agency action," **Qwest**, 398 F.3d at 1249, and point me to the legislation allowing the USCIS to grant LPR status to individuals associated with certain terrorist organizations. Defendants assert that this is a sensitive and complicated task and underscore that plaintiff's application has been given an elevated status to determine if his case has "compelling circumstances," so as to warrant adjudication. In response, plaintiff concedes that his case may be complex and may invoke national security concerns, but emphasizes that adjudication of his application has been delayed indefinitely. Again, plaintiff's position is persuasive.

While I appreciate that the USCIS is burdened with a delicate and difficult task and that the agency is striving to maintain consistency and make reasoned decisions, I cannot ignore the agency's obligation to act on plaintiff's application in a reasonably timely manner. **See id.**; **Kashkool v. Chertoff**, 553 F.Supp.2d 1131, 1144 (D. Ariz. 2008). That classification of the Dawa party *may* change at some indeterminate point in the future does not justify leaving plaintiff's application in an indefinite state of limbo. Defendants provide no reason why plaintiff's application cannot be adjudicated

immediately, subject to future re-opening and review when and if USCIS policies regarding the Dawa party change. Under these circumstances, I simply cannot deem the indefinite delay in this case to be reasonable.

The third factor in this case is perhaps the most factually unusual and requires ratiocination that is somewhat counterintuitive. However, again the facts ultimately weigh in favor of plaintiff's position. Defendants contend that the delay in adjudication benefits plaintiff. They note that plaintiff currently resides in the United States, is not subject to removal, and may work and travel so long as he files the requisite applications and pays the attendant fees. Defendants emphasize that if plaintiff's application were to be adjudicated under current USCIS policies, it likely would be denied and possibly would result in plaintiff's removal from the United States.

Defendants' argument puts me in mind of Abraham Lincoln's aphorism: "Whenever I hear anyone arguing for slavery, I feel a strong impulse to see it tried on him personally." Contrary to the Panglossian picture defendants paint, the legal limbo in which plaintiff daily finds himself has caused him great stress and anxiety. The indefinite nature of the delay in adjudicating his application has real and not insubstantial effects on plaintiff's life and livelihood, including limitations on his ability to travel, potential negative consequences on his legal status as a refugee, and the financial and bureaucratic burdens of regularly filing travel and work applications. Perhaps most critically, the delay of the final adjudication of plaintiff's application necessarily delays his goal of becoming a U.S. citizen. *See* 8 U.S.C. § 1427(a) (requiring an LPR to have resided continuously in the United States for five years

8

preceding the date of filing a naturalization application); *see also Kashkool*, 553 F.Supp.2d at 1145 (finding six-year delay in I-485 adjudication unreasonable and noting that the delay's affect on legal immigration status is detrimental to human welfare). Plaintiff evidently understands that his application may be denied,[9] but the consequences of the indefinite and unreasonable delay in adjudication of his application are assuredly equally as negative. This factor, therefore, also militates in favor of an order for immediate adjudication of plaintiff's I-485 application.

As to the fourth and final factor, defendants argue that the new legislation creates substantial administrative difficulties for the USCIS in resolving plaintiff's case and offer a palaverous iteration of their position that making decisions pursuant to said legislation is a massive, arduous, and onerous undertaking. Plaintiff contends that any difficulty in adjudicating his application does not warrant indefinite cunctation, and I must agree. Defendants offer no argument or evidence to suggest that the USCIS cannot adjudicate plaintiff's application immediately. Indeed, by discussing the anticipated denial of plaintiff's application, defendants impliedly concede that it can. Although recent changes in the law may well affect the outcome of plaintiff's application, in light of plaintiff's request and arguments, I cannot countenance further indefinite deferment of adjudication.

Accordingly, I find that there is no genuine issue of material fact regarding whether the delay in adjudicating plaintiff's I-485 application has been unreasonable. It has. Plaintiff is, therefore, entitled to summary judgment on his APA claim. Conversely,

---

[9] Plaintiff quite clearly expresses his wishes to see this process come to a close and alludes to his ability to appeal denial of his application, should it be necessary.

defendants' motion regarding that claim must be denied.

**THEREFORE, IT IS ORDERED** as follows:

1. That **Defendants' Motion for Summary Judgment** [#25] filed June 10, 2009, is **DENIED**;

2. That **Plaintiff's Motion for Summary Judgment** [#24] filed June 10, 2009, is **GRANTED** insofar as it seeks adjudication of his I-485 application under the APA;

3. That plaintiff's claims for adjudication of his I-485 application under the Mandamus Act and the Immigration and Nationality Act are **DISMISSED**;

4. That the USCIS **SHALL ADJUDICATE** plaintiff's I-485 application within **thirty (30) days** of the date of this order;

5. That within **fourteen (14) days** of the adjudication of plaintiff's I-485 application, defendants **SHALL FILE** a notice with the court reporting the outcome of the adjudication; and

6. That within **ten (10) days** of the date of this order, plaintiff **SHALL FILE** a notice specifying the claims that remain in this lawsuit and suggesting what further action, if any, is anticipated, requested, or required in this matter.

Dated March 29, 2010, at Denver, Colorado.

                                  **BY THE COURT:**

                                  Robert E. Blackburn
                                  United States District Judge